## Lombaert's Appeal.

1. Where the land of a testator is sold or mortgaged in pursuance of a decree of the Orphans' Court made under and by virtue of the provisions of the Act of April 18th, 1853, Pamph. L. 503, the purchaser or mortgagee takes title clear of the lien of a legacy charged by testator on said land.

2. *Semble*, that in such case the legatee can have recourse solely to the proceeds of the sale or mortgage, and that, in the event of the legacy being contingent, the court may direct the investment of a sufficient part of such proceeds to pay the legacy at the time when, by the terms of the will, it can be demanded.

February 8th 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Appeal from a decree of the Court of Common Pleas of *Delaware county :* Of January Term 1882, No. 194.

Bill in equity, wherein George Steel was complainant and George Junkin and A. Lewis Smith defendants. Subsequently, by amendment, Herman J. Lombaert and Sarah his wife, were also made parties defendant. The facts of the case, as they were alleged in the bill were as follows :

Samuel Leedom, by his will, bearing date April 4th 1871, and duly admitted to probate on March 18th 1872, provided, inter alia, as follows :—

*Item :* "I give and bequeath to my grandson, George P. Steel, the sum of two thousand dollars, to be paid to him when he shall attain the age of twenty-one years, should he so long live ; but should my said grandson die before attaining the age of twenty-one years, then this bequest to him shall be null and void."

Testator further devised to his son, Augustus B. Leedom, a certain farm in Haverford township, in trust, for said son's wife and children. He also devised to his son Emmor S. Leedom, a certain other farm in said township, in trust for his wife and children, conferring upon him a power of sale for the purposes of the trust. He further nominated his said two sons as his executors, and authorized, empowered and directed them to sell and convey a third tract of land.

"The proceeds of such sale or sales to be applied by my said executors, or so much thereof as may be necessary, to the payment of my just debts, funeral expenses, and expenses of settling my estate, not hereinbefore provided for ; and for the payment of the bequest to my grandson, George P. Steel.

"If any other moneys shall be needed for the payment of said debts and expenses, or satisfying said bequest to George P. Steel, I charge one-half thereof upon each of the said farms

and properties devised to my said sons Augustus B. and Emmor S., as aforesaid, and direct each of my said sons to pay such half when needed out of the said trust estates."

Letters testamentary were issued to the executors named in the will, and the last named tract of land sold by them. The proceeds thereof, however, together with the personal property of decedent, proved insufficent to pay his debts, or any part of Steel's legacy. Steel was, moreover, at that time, still under age.

The executors thereupon presented a petition to the Ophans' Court of Delaware county, praying for leave to mortgage the real estate of decedent for payment of his debts. A decree was entered, in accordance with the prayer of the petition, on June 3d 1872.

In pursuance of said decree, said executors mortgaged the real estate devised to Augustus B. Leedom, on June 20th 1872, to Sabina S. Knox, et al., to secure the payment of $3,200. Said mortgage afterwards, by assignment, became vested in Sarah J. Lombaert. Said executors, on June 3d 1872, in pursuance of the same decree, mortgaged the premises devised to Emmor S. Leedom, for $3,800. The sums raised by both mortgages were, however, insufficient to pay the testator's debts.

Subsequently, Augustus B. Leedom, as trustee of the premises devised to him, presented a petition to the Orphans' court, setting out that said premises were in a very ruinous state, and lacked repairs, and asking for leave to mortgage the same in order to raise a fund to effect said repairs. A decree was entered accordingly, and, in pursuance of said decree, said Augustus B. Leedom, on December 4th 1872, mortgaged the premises devised to him as aforesaid, for the sum of $5,500, to John F. Forrest. This mortgage also became subsequently vested, by assignment, in Sarah J. Lombaert, who thereby became the owner of both mortgages on the real estate devised by testator to Augustus B. Leedom.

The interest upon both said mortgages being in arrear, Sarah J. Lombaert proceeded, to foreclose the same, and, having obtained judgment thereon, issued writs of *levari facias*, by virtue whereof the mortgaged premises were sold at sheriff's sale, for $10,700, to said Sarah J. Lombaert. The sheriff, after deducting costs and taxes, made a special return that he had exchanged receipts with Sarah J. Lombaert for the residue of the fund. George P. Steel filed exceptions to this report, on the ground that the sale under the first mortgage discharged the lien of his legacy, and that, therefore, he was entitled to one-half the amount thereof in preference to the second mortgage. An auditor was appointed to pass on the exceptions, and to report distribution of the fund. Sarah J. Lombaert, however,

proposed, in lieu of paying the money into court, to make a deposit in trust to secure that portion of the proceeds claimed by Steel in right of his legacy. Her proposition was accepted, and the auditor dismissed. She thereupon deposited with George Junkin & A. Lewis Smith a bond of the Pennsylvania Railroad Co. for $1,000, and received her sheriff's deed. Junkin and Smith executed a declaration of trust, wherein, after reciting the foregoing facts, they acknowledged that they held the said bond upon the following trusts, namely:

1. To permit the said Sarah Lombaert to receive the income therefrom, which shall accrue due before the said George P. Steel shall attain the age of twenty-one years.

2. If it shall then or thereafter be legally ascertained that the said George P. Steel would have been entitled to receive the amount of said legacy out of the aforesaid proceeds of sale, the said trustees shall appropriate to the payment of said legacy the said bond, or so much of the proceeds thereof as shall be necessary for that purpose; provided, however, the said George P. Steel shall institute proceedings at law or in equity, within four months after attaining full age, for the purpose of having legally determined his right to such payment.

3. In case the said determination shall be adverse to his claim to payment as aforesaid, or in case he shall fail to institute such proceedings for the purpose of establishing the same within the period aforesaid, or in case he shall not survive to the age of twenty-one years, the said trustee shall re-assign said bond to Sarah Lombaert, or her legal representatives.

Steel, having arrived at the age of twenty-one years, filed the present bill, the prayers whereof were, that complainant be decreed to be entitled to be paid out of said bond that part of his legacy charged upon the premises devised to Augustus B. Leedom, and also that defendants, Junkin & Smith, be decreed to sell said bond and to, pay complainant from the proceeds thereof.

The respective answers of the defendants admitted the facts alleged in the bill, but claimed, that the second mortgage was entitled to claim the fund in priority to complainant's legacy. The case was referred to V. G. Robinson, Esq., as examiner and master, who reported that the complainant was entitled to a decree, and should be paid from the proceeds of the bond the sum of $1,000, with interest, from the time when he attained his majority.

Exceptions were filed by the defendants, which were dismissed by the court, a decree being entered in accordance with the master's recommendations. Sarah J. Lombaert thereupon took this appeal, assigning for error the decree of the court.

*W. B. Broomall* (*George Junkin* with him), for the appellant.—The mortgage being under the Price Act, it is clear, under the terms of said act, that the vendee at the sheriff's sale under the mortgage took clear of the legacy. The legatee was remitted to the proceeds of the mortgage.

*Elwood Wilson, Jr.*, and *G. E. Darlington*, for the appellee. —The legacy in question was vested, and not a mere executory bequest: Page's Appeal, 21 P. F. Smith 402; Burd *v.* Burd, 4 Wright 182; McClure's Appeal 22 P. F. Smith 414; Chess' Appeal, 6 Norris 362. The testator has blended his real and personal estate together in the devises to his sons in trust, and "it is a well-settled rule of law that when they are so blended by the testator, the land is charged with the payment of legacies. The reason assigned is, that the whole may take effect and all the legacies be paid, which is justly supposed to be the intention of the testator when both funds are put into one:" Davis' Appeal, 2 Norris 353; McLanahan *v.* Wyant, 1 P. & W. 96; Gallagher's Appeal, 12 Wright 121; Becker *v.* Kehr, 13 Wright 223; Brisben's Appeal, 20 P. F. Smith 405; Wertz's Appeal, 19 P. F. Smith 173. The legacy to the appellee being vested and charged upon the real estate, it was an estate in the lands subject only to the payment of decedent's debts, and it was beyond the power of the devisees of the lands to discharge it. Any sale or mortgage by them would have been subject to it. Where the claim is an undoubted lien upon the fund in court, the creditor cannot be driven from it to other security he may never realize, or not in full: Taylor's Appeal, 3 W. N. C. 75; Selden's Appeal, 24 P. F. S. 328. This doctrine is one of pure benevolence, and must not be so applied as to do injustice to the first lien creditor: Bruner's Appeal, 7 W. & S. 269.

Mr. Justice STERRETT delivered the opinion of the court, March 6th 1882.

The contingent legacy of $2,000 to the plaintiff below was to be paid to him, in the language of the will, " when he shall attain the age of twenty-one years, should he so long live; but should my grandson die before attaining the age of twenty-one years, then this bequest to him shall be null and void." After devising to each of his two sons, Augustus B. Leedom and Emmor S. Leedom, a tract of land, together with certain personal property thereon, in trust as therein set forth, and making provision for the payment of his debts, expenses of administration and the legacy aforesaid, the testator says: "If any other moneys shall be needed for the payment of said debts and expenses, or satisfying said bequest to George P. Steel, I charge

one-half thereof upon each of said farms and properties devised to my said sons, Augustus B. and Emmor S., as aforesaid, and direct each of my said sons to pay such half when needed out of the said trust estates." The legatee attained his majority in August 1879, and the legacy, theretofore contingent on that event, became absolute.

Shortly after the will was probated, in 1872, the two sons, executors therein named, obtained authority from the Orphans' Court to mortgage the real estate above mentioned, for the purpose of paying debts of the testator; and, in pursuance thereof, on June 3d, they mortgaged the land devised to Emmor S. Leedom, to secure the payment of $3,800, and on June 20th, they mortgaged the other part to secure the payment of $3,200. In December of the same year, Augustus B. Leedom, as trustee, under an order of the same court, authorizing a loan for the purpose of making improvements and repairs, borrowed $5,500, and secured the same by mortgage on the land devised to him in trust. The two last mentioned mortgages, on the same tract of land, were duly recorded, and afterwards assigned to appellant, who subsequently obtained judgments thereon, and sold the mortgaged premises in 1876. The net amount realized by the sheriff's sale to Mrs. Lombaert being insufficient to pay the mortgages in full, the sheriff, after deducting costs, took her receipt, as first lien creditor, for the residue. To this application of the purchase-money, the appellee, George P. Steel, objected, claiming that one-half of the legacy payable to him when he obtained his majority was a lien on the land sold, and should be paid out of the proceeds, in preference to the $5,500 mortgage. It was conceded that the sale upon the other mortgage for $3,200, given by the executors for money borrowed to pay debts, divested all liens, and that appellant took a clear title. The lien of the legacy, if any existed at the time of the sale, was undoubtedly divested, and the purchase money being substituted for the land, the legatee was remitted to that fund. Inasmuch as the contingency on which the legacy became absolute and payable had not yet happened, an arrangement was made whereby the $1,000 bond was placed in the hands of Messrs. Junkin and Smith, for the purposes expressed in their declaration of trust. In making this arrangement, it was manifestly the intention of the parties to substitute the bond for a corresponding amount of the purchase-money, and thus permit Mrs. Lombaert to take credit for the net proceeds of sale, and lift her deed, and at the same time protect the rights of the legatee, in case he had any, when the time for payment of his legacy should arrive. He was required, within four months after attaining his majority, to institute proceedings at law or in equity for the purpose of having his right to payment out of

the fund legally determined. Within the time named he accordingly filed the bill in this case against the trustees, and subsequently, by leave of court, make Mrs. Lombaert a party thereto.

As we have already seen, the testator, contingently at least, charged one half of the legacy upon the farm and property devised in trust, to his son Augustus, and directed him to pay the same, when needed, out of the trust-estate. For present purposes, it may be assumed there was a lack of other assets wherewith to satisfy that part of the legacy, and that it was, therefore, a lien on the land afterwards mortgaged and sold by appellant on her writs of *levari facias.*

The main contention of appellant is, that the lien was divested by the Orphans' Court proceeding, under which the land was mortgaged by the trustee, for the purpose of raising money with which to make necessary improvements and repairs. The proceeding was under the Act of 1853, known as the " Price Act," and appears to have been regularly and carefully conducted. That Act provides, inter alia, that where real estate shall have been acquired by descent or last will, the Orphans' court shall have jurisdiction to decree the sale, mortgaging, etc., of the same, when the court "shall be of the opinion that it is for the interest and advantage of those interested therein, that the same should be sold, mortgaged," etc. It declares that the title of purchasers under all such sales, mortgages or conveyances, shall be a fee-simple, indefeasible by any party or persons having a present or expectant interest in the premises, and be unprejudiced by any error in the proceedings of the court: that the purchase or mortgage money, as the case may be, shall, in all respects, be substituted for the real estate sold or mortgaged, as regards the enjoyment and ownership thereof, after the payment of liens, and shall be held for and applied to the use and benefit of the same persons, and for the same estate and interest, present or future, vested, contingent or executory, as was the real estate sold or mortgaged; that the money so raised shall be expended for no other purpose than the payment of liens upon, or the improvement of the same real estate; and it is made the duty of the court to decree the proper application of such purchase or mortgage money to the discharge of liens, and to parties interested, as and when they may be entitled.

In his application to the Orphans' Court for authority to mortgage the property, the trustee brought himself clearly within the provisions of the Act, and there appears to be no error in the proceedings: but if there was, it is expressly provided, as we have seen, that purchasers under mortgages thus created shall not be prejudiced.

From these provisions of the Act under which the mortgage was executed, it is very clear that, as to any lien the legatee may

[McQuillen *v.* Singer Manufacturing Co.]

have had before, the mortgage money was substituted for the land, and he was bound to look to that fund. The court doubtless had the power, and if application had been made it would have been its duty to have directed the investment of a sum sufficient to pay one half of the legacy, when by the terms of the will it could be demanded. It appears from the report of the master that there is yet in the hands of the successor to the original trustee, a portion of the fund raised on the mortgage, more than sufficient for that purpose.

The claim of the plaintiff below was resisted on other grounds, but · it is not necessary to refer to them specially. That covered by the second assignment is technical and without merit. Enough has been said to show that the legatee never could have had any right to the proceeds of the sheriff's sale, and consequently he has no claim on the bond in the hands of the trustees.

> Decree reversed; and it is now ordered and decreed that the bill be dismissed, and that the costs, including the costs of this appeal, be paid by the appellee.

MERCUR, J., dissents.